**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | |
|---|---|
| TERESA CULPEPPER,<br>on behalf of her minor child<br>C. C.,<br><br>     Plaintiff,<br><br><br>        vs.<br><br>KEVIN A. SHWEDO,<br>in his official capacity as the Executive<br>Director of the South Carolina Department of<br>Motor Vehicles,<br><br>and<br><br>TAMMY KING,<br> in her official capacity as the Manager of the<br>Anderson Office of the South Carolina<br>Department of Motor Vehicles,<br><br>     Defendants. | Civil Action No.:  3:14-cv-03504-CMC<br><br><br>**COMPLAINT** |

Plaintiff Teresa Culpepper ("Plaintiff"), on behalf of her minor child C. C. ("C. C."), by and through her undersigned attorneys, alleges against Defendants Kevin A. Shwedo ("Shwedo"), the Executive Director of the South Carolina Department of Motor Vehicles ("SCDMV"), and Tammy King ("King," and collectively with Shwedo "Defendants"), Manager of the SCDMV office in Anderson, South Carolina (the "Anderson DMV"), as follows.

**NATURE OF THE ACTION**

1.     This case is about the unconstitutional requirement that C. C., a sixteen-year-old high school student, remove his everyday makeup before being permitted to take a driver's license photo.  C. C. is male, but is gender non-conforming.  He wears makeup and androgynous clothing or clothing typically worn by women on a regular basis.

2.      Defendants are employees of the SCDMV who at all relevant times were acting under color of state authority.  In requiring C. C. to remove his makeup before allowing him to take his driver's license photo and receive his driver's license, Defendants relied on a policy that an applicant for a driver's license cannot "purposely alter[] his/her appearance so that the photo would misrepresent his/her identity."

3.      There is no disputing, and the SCDMV has acknowledged, that C. C. wears makeup on a regular basis.

4.      However, the SCDMV and its employees have interpreted the policy to prohibit a male applicant from wearing regular everyday makeup that they allow female applicants to wear under the same policy.

5.      Defendants' asserted justification for requiring that C. C.'s driver's license photo look **less** like his daily appearance is their preconceived notion of how males should and can look.  This preconceived notion is a sex stereotype and does not constitute a legitimate state interest.

6.      Defendants impermissibly discriminated against C. C. based on his sex and their sex stereotypes.  They unconstitutionally restrained C. C.'s freedom of expression and compelled and continue to compel him to convey an ideological message of their design.  And they deprived C. C. of his constitutionally protected liberty interest in his personal appearance.  Moreover, Defendants' policy is unconstitutionally vague and overbroad, enabling SCDMV personnel to make arbitrary and capricious decisions based on their perception of how a particular individual should look as male or female.

7.      C. C.'s mother brings this action on his behalf and respectfully requests declaratory and injunctive relief, pursuant to 42 U.S.C. § 1983, declaring the SCDMV Photo

Policy (defined herein) unconstitutional as interpreted and applied by Defendants, prohibiting Defendants from applying the SCDMV Photo Policy in an unconstitutional manner and ordering Defendants to allow C. C. to be photographed for his driver's license while wearing everyday makeup that he wears on a regular basis.  Plaintiff also requests this Court strike the policy as unconstitutionally vague and overbroad and an unconstitutional grant of unfettered discretion. Plaintiff further requests that the Court award reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988.

**PARTIES**

8.      Plaintiff Teresa Culpepper is the mother of minor C. C..  They are both residents of Anderson, South Carolina.  She brings this action on C. C.'s behalf pursuant to Federal Rule of Civil Procedure 17(c)(1).

9.      Defendant Kevin A. Shwedo serves as the Executive Director of the SCDMV and is responsible for overseeing the functions and responsibilities of the entire agency.  Upon information and belief, Defendant Shwedo is a resident of Columbia, South Carolina.  Defendant Shwedo is named in this action solely in his official capacity.

10.      Defendant Tammy King serves as the Manager of the SCDMV office in Anderson, South Carolina (the "Anderson DMV") and is responsible for overseeing the functions and responsibilities of the Anderson DMV.  Upon information and belief, Defendant King is a resident of South Carolina.  Defendant King is named in this action solely in her official capacity.

**JURISDICTION AND VENUE**

11.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1367, 28 U.S.C. § 1343, and 42 U.S.C. § 1983.

12.  Venue is proper in the District of South Carolina because Defendants are residents of South Carolina and all of the events or omissions giving rise to Plaintiff's claims occurred in this district.  28 U.S.C. § 1391(b).  Venue is proper in the Columbia Division because Defendant Shwedo resides within this division and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this division.  Local Civil Rule 3.01(A)(1) DSC.

## FACTS

## I.    Defendants Forced C. C. to Remove His Makeup Before Allowing Him to Take a Driver's License Photograph

### A.    C. C.'s Application for a Driver's License

13.  On March 3, 2014, C. C.'s mother took C. C. to the Anderson DMV to obtain his first driver's license.

14.  C. C. had already passed his driving test and had satisfied all requirements for a driver's license.

15.  On that day, as is typical, C. C. was wearing makeup.  His makeup consisted of foundation, mascara, eye shadow, and lip gloss.

16.  When C. C. and his mother arrived at the Anderson DMV on March 3, 2014, they obtained a numbered ticket and waited in the Anderson DMV lobby, which was nearly full of individuals waiting to be helped by the Anderson DMV staff.

17.  After waiting for approximately 20 to 30 minutes, C. C.'s number was called and he and his mother went to the counter and began speaking with an Anderson DMV employee regarding his desire to obtain a driver's license.

18.  The Anderson DMV employee complemented C. C. on his makeup, but indicated that he would not be able to wear fake eye lashes.

19.  C. C. and his mother informed her that his eye lashes were real.

20.    The employee then said she needed to speak with a supervisor and left to do so.

21.    She returned and told C. C. that her supervisor had stated that he needed to "go home" and "take off the makeup."

22.    C. C. and his mother informed the employee that C. C. wears makeup daily and that how he looked at the time is how he looks on a regular basis.

23.    C. C. and his mother then asked if this decision was being made pursuant to a policy and, if so, whether they could see the policy.  They also asked to speak with the supervisor.

24.    The Anderson DMV employee removed them from the line and sent them back to the lobby to wait for a manager.

**B.    Defendant King's Refusal to Provide C. C. a Driver's License**

25.    Instead of meeting with C. C. and his mother in an office, the Anderson DMV supervisor, Defendant King, spoke to C. C. and his mother in a hallway immediately adjacent to the Anderson DMV lobby in sight and in the hearing of many members of the public.

26.    Defendant King indicated that C. C. could not take his driver's license photograph while wearing his regular everyday makeup.

27.    Defendant King presented C. C. and his mother with one page of a SCDMV document containing a number of statements of SCDMV policy.

28.    Although Plaintiff requested a copy of the document for her records, Defendant King refused to provide her with a copy.

29.    Defendant King stated that the SCDMV policy provided that it was in her "discretion" to not allow C. C. to have his driver's license photo taken if she felt he was wearing a disguise.

30.    Defendant King first attempted to explain her decision to C. C. and his mother by asserting that, for his driver's license photo, C. C. needed to look the same way he would look when pulled over by a police officer.

31.    Plaintiff informed Defendant King that C. C. wears makeup on a daily basis and would be wearing it if pulled over by a police officer.

32.    Defendant King then stated that because C. C.'s license application indicated he is male, he needed to look male in his driver's license photograph.

33.    Defendant King stated that C. C. could look male by removing his makeup.

34.    C. C.'s mother asked Defendant King if a female applicant seeking a driver's license wearing makeup of the kind C. C. was wearing, *i.e.*, foundation, mascara, eye shadow, and lip gloss, was required to remove her makeup prior to taking a photograph for a driver's license.

35.    Defendant King did not respond to Plaintiff's question referenced in paragraph 34.

36.    C. C.'s mother also asked Defendant King if an applicant seeking a driver's license was required to remove his or her hairpiece, *i.e.*, a wig, toupee or hair extensions, prior to taking a photograph for a driver's license.

37.    Defendant King did not respond to Plaintiff's question referenced in paragraph 36.

38.    Upon information and belief, the SCDMV and Defendant King allow individuals of both sexes to alter their appearance in their driver's license photos by, for instance, wearing hairpieces, so long as those alterations conform to Defendants' stereotypical notions of what men and women should look like.

39.    Defendant King told C. C. and his mother that several months earlier, a driver's license applicant whose application indicated the applicant was male had attempted to obtain a license wearing makeup.

40.    Defendant King said that she had made that applicant go home and remove the makeup.

41.    Upon information and belief, Defendant King was proud of her ability to force a change in that applicant's appearance before allowing that applicant to be photographed for a driver's license and obtain a license.

**C.    Removal of C. C.'s Makeup**

42.    C. C.'s mother ultimately asked Defendant King what C. C. needed to do in order to obtain a license during that visit to the Anderson DMV.

43.    Defendant King stated that C. C. would need to remove all of his makeup.

44.    Defendant King then leaned in close to C. C.'s face and loudly repeated "all of it."

45.    Upon information and belief, Defendant King spoke loudly and held the meeting in a hallway immediately adjacent to the lobby so that others in the lobby could hear her.

46.    C. C. did not have any makeup remover but went to the nearby restroom and attempted to remove his makeup with soap, water, and brown paper towels.

47.    C. C. returned to the lobby and was loudly told by Defendant King that he had not removed enough makeup.

48.    Publically humiliated by this treatment, C. C. again returned to the bathroom and attempted to remove any remaining makeup with soap, water, and brown paper towels.

49.    After the second trip to the bathroom, Defendant King allowed C. C. to take his driver's license photo while appearing as Defendant King thought a male should appear.

50.    All of C. C. and his mother's interactions with Defendant King, taking nearly 45 minutes to an hour, took place in a hallway immediately adjacent to the Anderson DMV lobby in front of members of the public waiting to be served.

51.    Throughout the interactions with Defendant King, members of the public in the Anderson DMV lobby laughed and snickered at C. C..

52.    Upon information and belief, Defendant King has not been told that her actions with C. C. and his mother on March 3, 2014 were incorrect or otherwise contravened SCDMV policy.    Instead, in or about July 2014, Defendant Shwedo presented Defendant King with a Commendable Service Award.

**D.      Plaintiff and C. C. Ask Defendants to Reconsider**

53.    On June 9, 2014, C. C.'s counsel, the Transgender Legal Defense and Education Fund, sent a letter to Defendant Shwedo and Frank L. Valenta, Jr., the SCDMV's General Counsel, (the "Letter") asking that C. C. be allowed to retake his driver's license photograph while wearing his everyday makeup.

54.    The Letter suggested that the DMV's action to force him to remove his makeup was unconstitutional discrimination based on sex and sex stereotypes, including the stereotype that "boys typically do not wear makeup," and an inappropriate and unconstitutional restraint on his freedom of expression.

55.    The Letter indicated that "C. C. is eager to take his picture again, with makeup, and to put this incident behind him."

56.    Although Beth Parks ("Parks"), an employee in the Strategic Communications and Community Affairs Department of the SCDMV, indicated to the media that the SCDMV would respond, the SCDMV has not directly responded to C. C. or his counsel regarding the Letter.

## II.    The SCDMV Photo Policy

57.    The SCDMV expressly permits the wearing of "[r]egular everyday cosmetic makeup."

58.    Upon information and belief, the SCDMV employees working at the Anderson DMV on March 3, 2014, including Defendant King, were relying upon a statement within SCDMV Procedure DL-201 that:

> At no time will an applicant be photographed when it appears that he/she is purposely altering his/her appearance so that the photo would misrepresent his/her identity.

(the "SCDMV Photo Policy").

59.    The SCDMV Photo Policy is also described by the summary of the SCDMV Procedure DL-201, which states that "[t]he Photo must always represent the credential holder in a way that does not disguise his/her identity."

60.    Parks made at least six statements to the media in June 2014 related to C. C. on behalf of the SCDMV.

61.    Parks made clear in these contacts with the press that she was "speak[ing] for the agency not for [her]self."

62.    Parks informed the media of the SCDMV Photo Policy and reported it verbatim to news organizations.

63.    Parks confirmed to the media that the SCDMV Photo Policy is the applicable SCDMV policy and was relied upon by the SCDMV employees working at the Anderson DMV on March 3, 2014, including Defendant King.

64.    Parks indicated that the SCDMV Photo Policy required C. C. to remove his makeup before the SCDMV would allow him to be photographed for his driver's license.

65.     Parks said that the SCDMV employees in the Anderson DMV, including Defendant King, did "what they are required to do" and were "just following DMV policy."

66.     Parks indicated that if C. C. had been allowed to take the photograph with makeup on, it would have violated the SCDMV Photo Policy.

### III.    The Defendants Impermissibly Discriminated Against C. C. on the Basis of Sex and Sex Stereotypes

67.     In denying C. C. the opportunity to take a driver's license photo with his makeup on, SCDMV employees working at the Anderson DMV on March 3, 2014, including Defendant King, acting in her official capacity at the SCDMV, unconstitutionally discriminated against C. C. based on his sex and her sex stereotypes, including the stereotype that males do not or should not wear makeup.

68.     The SCDMV Photo Policy, as applied to C. C. by the SCDMV and in particular Defendant King, and as described by the SCDMV's spokesperson, discriminates on the basis of sex and sex stereotypes by allowing women to wear makeup in driver's license photographs regardless of whether they ordinarily wear it, but not allowing men to wear makeup even when it is part of their everyday appearance as it is for C. C..

69.     Upon information and belief, the SCDMV does not require a female applicant to remove makeup of the kind C. C. was wearing, *i.e.*, foundation, mascara, eye shadow, and lip gloss, prior to taking a photograph for a driver's license.

70.     The same section of SCDMV Procedure DL-201 that sets forth the SCDMV Photo Policy expressly provides that "[r]egular everyday cosmetic makeup is acceptable because it is generally used to highlight natural beauty and/or to hide blemishes or flaws."

71.     Parks made clear that women are allowed to wear makeup of the kind worn by C. C. on March 3, 2014 in their drivers' license photos.

72.    Parks stated that "for women, regular everyday make up is acceptable."

73.    In refusing to allow C. C. to wear makeup in his driver's license photo, Defendant King made clear that she was doing so based on her sex stereotype of how a male should appear.

74.    In her statements to the media, Parks made clear that the requirement that C. C. remove his makeup was based on sex stereotypes of what men should look like or prefer, including the stereotype that males do not wear makeup.

75.    Parks stated that "[s]tage makeup is not acceptable because it can be used to alter appearance.   Regular everyday makeup is accepted because it's used to highlight or hide blemishes."

76.    Rather than suggest that C. C. wore stage makeup on March 3, 2014, Parks acknowledged that he wore everyday makeup on a regular basis.  She specifically stated that, "I understand that he does wear makeup all the time, and for women, regular everyday make up is acceptable, but it is unusual to see it on a young man."

77.    Parks stated, "[i]f your name is David Jones and it says you are a male, then you should look like a male."

78.    The SCDMV allows men and women to alter their appearance for their driver's license photos so long as such alterations are consistent with the SCDMV's sex stereotypes.

79.    Upon information and belief, the SCDMV allows individuals of both sexes to wear hairpieces, i.e., wigs, toupees or hair extensions, in their driver's license photos.

80.    Upon information and belief, the SCDMV does not require an applicant to take a new photograph if they begin or stop wearing a hairpiece or otherwise alter their appearance by dying their hair, growing or removing facial hair, adding or removing tattoos, experiencing substantial weight change, or undergoing plastic surgery that may alter a person's appearance.

81.     Because C. C.'s wearing of makeup does not conform to Defendants' sex stereotypes, including the stereotype that males do not wear makeup, the SCDMV discriminated against C. C. by refusing to allow him to take his driver's license photograph while wearing his regular everyday makeup.

## IV.    Defendants Impermissibly Restrained C. C.'s Freedom of Speech and Expression and Compelled Him to Convey Their Ideological Message

82.     By refusing to allow C. C. to take a driver's license photo with his makeup on, SCDMV employees working at the Anderson DMV on March 3, 2014, including Defendant King, acting in her official capacity at the SCDMV, unconstitutionally restrained C. C.'s freedom of speech and expression and compelled him to convey Defendants' ideological message that men and women should dress and appear in accordance with their sex stereotypes.

### A.    C. C. Speaks Symbolically Through His Makeup

83.     Through his makeup and clothing, C. C. conveys a particularized message to those around him about being gender non-conforming.

84.     Upon information and belief, C. C.'s message about being gender non-conforming is generally recognized and understood by those around him.

85.     C. C. applied for and received a driving permit at the Anderson DMV in or about March 2013.  In the photograph for his permit he wore makeup, including foundation and mascara.  He was not asked to remove his makeup or otherwise alter his appearance for his driving permit photo.

86.     Through the makeup worn in his driving permit photo, C. C. conveyed a particularized message about being gender non-conforming to those who viewed his driving permit.

87.      As government-issued identification, C. C.'s driving permit was regularly or at any time could have been shown to or demanded by government employees, including law enforcement officers and Transportation Security Administration employees, and members of the public at private institutions, including bank tellers and movie theater employees.

88.      Upon information and belief, C. C.'s particularized message about being gender non-conforming in his driving permit photo was generally recognized and understood by those who viewed it.

89.      C. C.'s makeup on March 3, 2014, when C. C.'s mother took him to the Anderson DMV to obtain his first driver's license, was similar to the makeup he had worn in his driving permit photo.

90.      Through the makeup worn on March 3, 2014 to the Anderson DMV to take his driver's license photo, C. C. intended to convey a particularized message about being gender non-conforming to those who saw him in person that day and those who viewed his driver's license photo in the future.

91.      As government-issued identification, C. C.'s driver's license will be regularly or at any time could be shown to or demanded by government employees, including law enforcement officers and Transportation Security Administration employees, and members of the public, including bank tellers and movie theater employees.

92.      Upon information and belief, C. C.'s intended particularized message about being gender non-conforming in his driver's license photo and its consistency with his appearance would have been recognized and understood by those who viewed it.

**B.      Defendants Impermissibly Restricted C. C.'s Symbolic Speech**

93.      In requiring C. C. to remove his makeup for his driver's license photo, employees working at the Anderson DMV on March 3, 2014, including Defendant King, acting in her

official capacity at the SCDMV, unconstitutionally restrained C. C. from conveying his particularized message of gender non-conformity.

94.     Despite being told and apparently acknowledging that C. C. was gender non-conforming and wore makeup on a daily basis, Defendants chose to restrict C. C.'s ability to symbolically speak.

95.     Parks' explicit statements that men do not usually wear makeup are consistent with the notion that C. C.'s message about being gender non-conforming in wearing makeup was understood and intentionally restricted by Defendants because they do not agree with his message.

**C.     Defendants Compelled C. C. to Convey Their Ideological Message**

96.     Upon information and belief, Defendant King told C. C. and his mother the story about her treatment of a previous applicant to express Defendants' ideological message that men should not wear makeup, consistent with her perception of how males should appear.

97.     Upon information and belief, Defendant King's decision to speak loudly and publicly to C. C. and his mother in the lobby of the Anderson DMV was intentionally done in a manner so as to draw the attention of the members of the public in the lobby and ensure they understood that she was requiring C. C. to remove his makeup in order to take his driver's license photo.

98.     In requiring C. C. to remove his makeup for his driver's license photo, Defendant King compelled C. C. to engage in symbolic speech reflecting Defendants' ideological message.

99.     Defendant King forced C. C. to convey a particularized message that men should not wear makeup or otherwise be gender non-conforming consistent with her perception of how males should appear.

100.    Upon information and belief, Defendant King intended to convey this message to SCDMV employees and members of the general public waiting in the SCDMV lobby as well as to government employees, including law enforcement officers and Transportation Security Administration employees, and members of the public at private institutions, including bank tellers and movie theater employees that will view C. C.'s driver's license in the future.

101.    Upon information and belief, the particularized message Defendant King compelled C. C. to convey was recognized and understood by those around him, including SCDMV employees and members of the general public waiting in the SCDMV lobby, and will also be recognized and understood by individuals and institutions that will view C. C.'s driver's license in the future.

102.    That message, which otherwise would not have been made by C. C. and is also directly contrary to the message that he conveys regarding being gender non-conforming, has been made even clearer to the public through statements by Parks, including statements suggesting that C. C. does not look like a man.

103.    Parks' explicit statements that men do not usually wear makeup were intended to and succeeded in creating additional public understanding of the compelled, particularized, and ideological message that Defendants forced C. C. to convey by requiring him to remove his makeup—men should not wear makeup of the sort commonly worn by women.

## V.    The Impermissible Purported Justification for the SCDMV Policy and Defendants' Actions

104.    The makeup C. C. was wearing on March 3, 2014 alters C. C.'s appearance less than individuals who alter their appearance by wearing a hairpiece, dying their hair, growing or removing facial hair, adding or removing tattoos or undergoing plastic surgery.

105.    Instead of suggesting that the state has an interest in ensuring that an individual's driver's license photograph accurately portrays the individual's likeness, Parks explained that the government interest behind the SCDMV Policy is that an individual's photograph resemble certain stereotypical notions of what men and women should look like.

106.    The asserted justification for the SCDMV Photo Policy is that if C. C. did not "look like a male" in his driver's license photo, law enforcement officers could be confused by the disparity between his photograph and the indication on his license that he is male.

107.    Parks stated that "[w]hen this young man has to show his ID, his ID shows that he's male.  The card says he's male [and therefore], he needs to look like a male."

108.    Parks also said:  "If it says male [on the license], that's what they're gonna [SIC] look for.  They expect the photo to be of a man."

109.    A photograph of C. C., who is identified as male on his driver's license, is no less a photograph of a "male" because C. C. is wearing makeup.

110.    Any law enforcement officer viewing a license photo of C. C. with makeup would easily recognize that the photo is of C. C..

111.    But Parks affirmatively rejected the notion that the policy serves a government interest in ensuring that an individual's identification accurately portrays his or her appearance on a daily basis.

112.    Parks said "[i]f they [law enforcement officers] stop somebody and they're dressed as a woman, they can straighten that out."

113.    Rather than assist law enforcement officers, the SCDMV Photo Policy and its interpretation and application serve to confuse them by requiring that C. C. take a photo for his license that less accurately reflects how he looks on a daily basis.

114.    The SCDMV Photo Policy is not narrowly tailored to achieve a compelling government interest, substantially related to an important government interest, or even rationally related to a legitimate government interest.

115.    The justification for the SCDMV Photo Policy asserted by Parks—police officers would be confused if an individual's likeness in the photograph does not resemble certain preconceived notions of what men and women should look like—is not a legitimate government interest.

116.    No legitimate government interest exists in requiring that a driver's license applicant's photograph conform to a preconceived notion of what men and women should look like.

117.    Upon information and belief, the SCDMV Photo Policy is still in place and SCDMV officials have continued to interpret it in a manner guided by sex stereotypes.

118.    Upon information and belief, the SCDMV has refused to allow other individuals who are gender non-conforming to take driver's license photographs consistent with those individuals' daily appearances.

## VI.    The SCDMV Photo Policy Is Vague and Overbroad Because of Its Use of the Term "Identity"

119.    The SCDMV Photo Policy centers on whether changes to appearance purposely misrepresent an applicant's "identity."

120.    The SCDMV Procedure DL-201, which contains the SCDMV Photo Policy, does not include any definition of the word "identity."

121.    Upon information and belief, the SCDMV has not distributed any definition of the word "identity" or guidance on its meaning in the SCDMV Photo Policy to employees or the public.

122.    The word "identity" in the SCDMV Photo Policy renders it impermissibly vague and overbroad.

123.    The word "identity" has been inconsistently interpreted and applied by SCDMV employees to, in some cases, include sex or sex stereotypes.

124.    Other policies for identification photos do not use such a vague and overbroad term.  For instance, photo requirements for United States passports require only that the photograph of an applicant "reflect [the applicant's] current appearance."

125.    The vague and overbroad term "identity" allows SCDMV employees to make arbitrary and capricious restrictions – often based on nothing more than sex stereotypes – on an individual's appearance before they will allow that person to be photographed for a license.

126.    In this instance, the vague and overbroad term "identity" allowed Defendant King and Parks to impermissibly interpret the policy's restriction on appearance based on C. C.'s sex and expressions of his gender non-conformity.

127.    Defendant King required C. C. to look like Defendant King's vision of a male in his driver's license photo by requiring that C. C. remove his makeup.

128.    Parks explicitly and repeatedly told media outlets that the word "identity" in the policy refers to sex.

129.    Parks, referring to C. C., said that "[h]is identity is boy."

130.    Parks stated that "it's important for a license picture to portray who the person is legally."

131.    Parks also stated that "his identity is as a male, and his driver's license says that he is a male, so his identity is a male."

132.    Parks said that "[i]f it's Thomas Jones on the license and yet it looks like a female, that is very confusing for" law enforcement officers. She continued, "[t]hey want to know what the identity is."

## VII.    The SCDMV Photo Policy Grants SCDMV Supervisors Unfettered Discretion to Reject an Applicant for a Driver's License

133.    The SCDMV Photo Policy improperly grants Defendant King and other SCDMV supervisors unfettered discretion to deny applicants the ability to take a driver's license photo and obtain a driver's license.

134.    Upon information and belief, the SCDMV's enforcement of the SCDMV Photo Policy is inconsistent and dependent on the unfettered discretion of SCDMV employees, including their sex stereotypes.

135.    Upon information and belief, while Defendant King may require male applicants to remove makeup prior to taking a photograph for a driver's license, SCDMV supervisors do not consistently require male applicants to remove makeup prior to taking a photograph for a driver's license.

136.    In a related situation, where an individual already has a license but his or her appearance has changed, such as if an individual begins or stops wearing a hairpiece or otherwise alters his or her appearance by dying his or her hair, growing or removing facial hair, adding or removing tattoos, undergoes substantial weight change or plastic surgery, SCDMV supervisors are not empowered with unfettered discretion.  Instead, SCDMV Procedure DL-201 provides discretion ***to the customer*** rather than to a SCDMV supervisor as to whether a new photograph must be taken.  "If the customer feels that he can still be identified from the photo on his current credential, he does not need to apply for a new credential."

### FIRST CLAIM FOR RELIEF
### (Sex Discrimination – Violation of the Right to Equal Protection of the Law
### Under the Fourteenth Amendment to the United States Constitution)

137.    Plaintiff realleges the allegations set forth in Paragraphs 1-136 above as if fully set forth herein.

138.    Defendants, employees of the SCDMV, are responsible for creating and/or implementing the SCDMV Photo Policy.

139.    Defendants, acting under color of state law, violated the equal protection clause of the Fourteenth Amendment to the United States Constitution by applying the SCDMV Photo Policy to C. C. to require that he remove his makeup before they would allow him to be photographed for his driver's license.

140.    Defendants made this determination based solely on C. C.'s sex and/or Defendants' sex stereotypes.

141.    Defendants do not require women to remove makeup of the kind worn by C. C. before a driver's license photo can be taken.

142.    Defendants also do not require individuals to alter their everyday appearance if such appearance conforms to Defendants' sex stereotypes, including women wearing makeup and men and women wearing hairpieces.

143.    Discriminating against C. C. based on his sex and sex stereotypes is not substantially related to an important government interest.  Nor is it rationally related to a legitimate government interest.

144.    The purported government interest asserted by the SCDMV spokesperson, preventing confusion of law enforcement officers, is actually hampered by the SCDMV Photo Policy and Defendants' actions.

145.     The government has no legitimate interest in requiring that a driver's license applicant's photo conform to preconceived notions of what men and women should look like.

146.     As a result of Defendants' actions, C. C. was deprived of his right to equal protection of the laws under the Fourteenth Amendment, and Plaintiff, bringing this action on his behalf, is entitled to declaratory and injunctive relief pursuant to 42 U.S.C. § 1983.

147.     Plaintiff is also entitled to reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988.

**SECOND CLAIM FOR RELIEF**
**(Restraint on Freedom of Speech and Expression – Violation of**
**the First Amendment to the United States Constitution)**

148.     Plaintiff realleges the allegations set forth in Paragraphs 1-147 above as if fully set forth herein.

149.     Defendants, employees of the SCDMV, are responsible for creating and/or implementing the SCDMV Photo Policy.

150.     Defendants, acting under color of state law, violated the First Amendment to the United States Constitution by applying the SCDMV Photo Policy to C. C. to require that he remove his makeup before they would allow him to be photographed for his driver's license.

151.     Defendants' actions in applying the SCDMV Photo Policy constituted an unconstitutional prior restraint on C. C.'s freedom of speech and expression.

152.     C. C. is gender non-conforming.

153.     C. C. expresses a particularized message about gender non-conformity by wearing makeup and androgynous clothing or clothing typically worn by women.

154.     Upon information and belief, members of the public recognize and understand C. C.'s symbolic message conveyed through his makeup.

155.    Defendants recognize and understand C. C.'s symbolic message conveyed through his makeup.

156.    Defendants impermissibly restrained C. C.'s ability to convey his particularized message about his gender non-conformity by requiring him to remove his makeup before they would allow him to be photographed for his driver's license.

157.    The SCDMV Photo Policy, as interpreted by the Defendants, constituted an impermissible prior restraint on C. C.'s protected first amendment rights and relates to the suppression of his free expression.

158.    The restraint on C. C.'s freedom of speech and expression fails to serve a compelling state interest and is not narrowly drawn to achieve that end.  Nor is it rationally related to a legitimate state interest.

159.    The purported government interest asserted by the SCDMV spokesperson, preventing confusion of law enforcement officers, is actually hampered by the SCDMV Photo Policy and Defendants' actions.

160.    The government has no legitimate interest in requiring that a driver's license applicant's photo conform to preconceived notions of what men and women should look like.

161.    As a result of Defendants' actions, C. C. was deprived of his right to freedom of expression under the First Amendment to the United States Constitution, and Plaintiff, bringing this action on his behalf, is entitled to declaratory and injunctive relief pursuant to 42 U.S.C. § 1983.

162.    Plaintiff is also entitled to reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988.

### THIRD CLAIM FOR RELIEF
**(Compelled Speech – Violation of the First Amendment to the United States Constitution)**

163.    Plaintiff realleges the allegations set forth in Paragraphs 1-162 above as if fully set forth herein.

164.    Defendants, employees of the SCDMV, are responsible for creating and/or implementing the SCDMV Photo Policy.

165.    Defendants, acting under color of state law, violated the First Amendment to the United States Constitution by applying the SCDMV Photo Policy to C. C. to require that he remove his makeup before they would allow him to be photographed for his driver's license.

166.    By forcing C. C. to appear without makeup in his driver's license photograph, Defendants compelled him to symbolically convey an ideological, particularized message about what men should look like and that men do not wear makeup.

167.    Defendants recognize and understand the symbolic message conveyed through C. C.'s photograph without makeup and how that compelled message will undermine and contradict the message that C. C. makes on a daily basis.  This is especially so in light of the SCDMV's statements that by taking a photo without makeup C. C. was expressing a different message about how males should or can look.

168.    The purported government interest asserted by the SCDMV spokesperson, preventing confusion of law enforcement officers, is actually hampered by the SCDMV Photo Policy and Defendants' actions.

169.    The government has no legitimate interest in requiring that a driver's license applicant's photo conform to preconceived notions of what men and women should look like.

170.    As a result of Defendants' actions, C. C. was compelled to speak in violation of his right to freedom of expression under the First Amendment to the United States Constitution,

and Plaintiff, bringing this action on his behalf, is entitled to declaratory and injunctive relief pursuant to 42 U.S.C. § 1983.

171.    Plaintiff is also entitled to reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988.

### FOURTH CLAIM FOR RELIEF
**(Liberty Interest in Personal Appearance – Violation of Due Process of Law Under the Fourteenth Amendment to the United States Constitution)**

172.    Plaintiff realleges the allegations set forth in Paragraphs 1-171 above as if fully set forth herein.

173.    Defendants, employees of the SCDMV, are responsible for creating and/or implementing the SCDMV Photo Policy.

174.    Defendants, acting under color of state law, violated C. C.'s right to due process of law under the Fourteenth Amendment to the United States Constitution by applying the SCDMV Photo Policy to C. C. to require that he remove his makeup before they would allow him to be photographed for his driver's license.

175.    C. C. has a constitutionally protected liberty interest in choosing his personal appearance.

176.    Defendants infringed on that liberty interest by requiring that he remove his makeup before they would allow him to be photographed for his driver's license.

177.    Infringing on C. C.'s ability to control his personal appearance is not narrowly tailored to achieve a compelling government interest.  Nor is it substantially related to an important government interest or rationally related to a legitimate government interest.

178.    The purported government interest asserted by the SCDMV spokesperson, preventing confusion of law enforcement officers, is actually hampered by the SCDMV Photo Policy and Defendants' actions.

179.    The government has no legitimate interest in requiring that a driver's license applicant's photo conform to preconceived notions of what men and women should look like.

180.    As a result of Defendants' actions, C. C. was deprived of his right to liberty under the Fourteenth Amendment to the United States Constitution, and Plaintiff, bringing this action on his behalf,  is entitled to declaratory and injunctive relief pursuant to 42 U.S.C. § 1983.

181.    Plaintiff is also entitled to reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988.

**FIFTH CLAIM FOR RELIEF**
**(Vague and Overbroad – Violations of the First and**
**Fourteenth Amendments to the United States Constitution)**

182.    Plaintiff realleges the allegations set forth in Paragraphs 1-181 above as if fully set forth herein.

183.    Defendants, employees of the SCDMV, are responsible for creating and/or implementing the SCDMV Photo Policy.

184.    The SCDMV Photo Policy, as created and implemented by Defendants acting under color of state law, is unconstitutionally vague and overbroad.

185.    The SCDMV Photo Policy states that "[a]t no time will an applicant be photographed when it appears that he or she is purposely altering his or her appearance so that the photo would misrepresent his or her identity."

186.    The absence of guidance or a specific definition of "identity" renders the policy vague and overbroad such that it chills the appropriate and constitutionally protected symbolic speech of driver's license applicants.

187.    SCDMV employees, including Defendants, lacking guidance on the specific meaning of the term "identity," have interpreted it in the context of the SCDMV Photo Policy in an unconstitutional manner to include sex and sex stereotypes.

188.    As a result of this interpretation of the vague and overbroad language of the SCDMV Photo Policy, C. C. was deprived of his right to due process of law under the Fourteenth Amendment to the United States Constitution and his freedom of speech and expression under the First Amendment to the United States Constitution, and Plaintiff, bringing this action on his behalf, is entitled to declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201-02.   Plaintiff also seeks to have the SCDMV Photo Policy stricken as unconstitutional.

189.    Plaintiff is also entitled to reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988.

## SIXTH CLAIM FOR RELIEF
### (Unfettered Discretion – Violation of the
### First Amendment to the United States Constitution)

190.    Plaintiff realleges the allegations set forth in Paragraphs 1-189 above as if fully set forth herein.

191.    Defendants, employees of the SCDMV, are responsible for creating and/or implementing the SCDMV Photo Policy.

192.    The SCDMV Photo Policy, as created and implemented by Defendants acting under color of state law, is an unconstitutional grant of unfettered discretion to SCDMV supervisors.

193.    The absence of any element of certainty in this unfettered discretion allows supervisors, such as Defendant King, to limit symbolic speech and censor certain viewpoints.

194.    Defendant King exercised this unconstitutionally granted unfettered discretion by refusing to allow C. C. to be photographed for his driver's license photo while wearing makeup that in no way constituted an attempt by C. C. to "purposely alter[] his . . . appearance so that the photo would misrepresent his . . .  identity."

195. As a result of the improper grant of discretion in the SCDMV Photo Policy, C. C. was deprived of his freedom of speech and expression under the First Amendment to the United States Constitution, and Plaintiff, bringing this action on his behalf, is entitled to declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201-02. Plaintiff also seeks to have the SCDMV Photo Policy stricken as unconstitutional.

196. Plaintiff is also entitled to reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988.

### SEVENTH CLAIM FOR RELIEF
### (Vague and Overbroad – Violations of
### Article 1, Sections 2 and 3 of the South Carolina Constitution)

197. Plaintiff realleges the allegations set forth in Paragraphs 1-196 above as if fully set forth herein.

198. Defendants, employees of the SCDMV, are responsible for creating and/or implementing the SCDMV Photo Policy.

199. The SCDMV Photo Policy, as created and implemented by Defendants acting under color of state law, is unconstitutionally vague and overbroad under the South Carolina Constitution.

200. The SCDMV Photo Policy states that "[a]t no time will an applicant be photographed when it appears that he or she is purposely altering his or her appearance so that the photo would misrepresent his or her identity."

201. The absence of guidance or a specific definition of "identity" renders the policy vague and overbroad such that it chills the appropriate and constitutionally protected symbolic speech of driver's license applicants.

202. SCDMV employees, including Defendants, lacking guidance on the specific meaning of the term "identity," have interpreted it in the context of the SCDMV Photo Policy, in

a manner unconstitutional under the South Carolina Constitution, to include sex and sex stereotypes.

203.    As a result of this interpretation of the vague and overbroad language of the SCDMV Photo Policy, C. C. was deprived of his right to due process of law under Article 1, Section 3 of the South Carolina Constitution and his freedom of speech under Article 1, Section 2 of the South Carolina Constitution, and Plaintiff, bringing this action on his behalf, is entitled to declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201-02.  Plaintiff also seeks to have the SCDMV Photo Policy stricken as unconstitutional under the South Carolina Constitution.

## EIGHTH CLAIM FOR RELIEF
### (Unfettered Discretion – Violations of
### Article 1, Section 2 of the South Carolina Constitution)

204.    Plaintiff realleges the allegations set forth in Paragraphs 1-203 above as if fully set forth herein.

205.    Defendants, employees of the SCDMV, are responsible for creating and/or implementing the SCDMV Photo Policy.

206.    The SCDMV Photo Policy, as created and implemented by Defendants acting under color of state law, is a grant of unfettered discretion to SCDMV supervisors unconstitutional under the South Carolina Constitution.

207.    The absence of any element of certainty in this unfettered discretion allows supervisors, such as Defendant King, to limit symbolic speech and censor certain viewpoints.

208.    Defendant King exercised this unconstitutionally granted unfettered discretion by refusing to allow C. C. to be photographed for his driver's license photo while wearing makeup that in no way constituted an attempt by C. C. to "purposely alter[] his . . . appearance so that the photo would misrepresent his . . .  identity."

209.    As a result of the improper grant of discretion in the SCDMV Photo Policy, C. C. was deprived of his freedom of speech under Article 1, Section 2 of the South Carolina Constitution, and Plaintiff, bringing this action on his behalf, is entitled to declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201-02.  Plaintiff also seeks to have the SCDMV Photo Policy stricken as unconstitutional under the South Carolina Constitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A.    For declaratory and injunctive relief:

(i) declaring the SCDMV Photo Policy unconstitutional as interpreted and applied by Defendants,

(ii) prohibiting Defendants from applying the SCDMV Photo Policy in an unconstitutional manner, and

(iii) ordering Defendants to allow C. C. to be photographed for his driver's license while wearing everyday makeup that he wears on a regular basis;

B.    For an order striking the SCDMV Photo Policy as unconstitutionally vague and overbroad;

C.    For an order awarding Plaintiff costs of suit, including litigation expenses, and reasonable attorneys' fees, in accordance with all applicable provisions of law, including but not limited to the provisions of 42 U.S.C. § 1988, in an amount which this Court deems just, equitable, and proper; and

D.    For such other and further relief as this Court deems just and proper.

Dated:  September 2, 2014                    Respectfully submitted,
Greenville, South Carolina


                                            s/ Marshall Winn
                                            Marshall Winn (529)
                                            Wallace K. Lightsey (1037)
                                            WYCHE, P.A.
                                            44 East Camperdown Way
OF COUNSEL:                                  Greenville, S.C. 29601
(*Pro Hac Vice* Applications To Be Filed)    Tel.:  (864) 242-8200
                                            Fax:  (864) 235-8900
Peter Guirguis                              mwinn@wyche.com
Melanie M. Kotler                           wlightsey@wyche.com
David B. Schwartz
FULBRIGHT & JAWORSKI LLP
666 Fifth Avenue                            *Attorneys for Plaintiff*
New York, NY 10103
Tel.:  (212) 318-3000
Fax:  (212) 318-3400
peter.guirguis@nortonrosefulbright.com
melanie.kotler@nortonrosefulbright.com
david.schwartz@nortonrosefulbright.com

Michael D. Silverman
TRANSGENDER LEGAL DEFENSE &
EDUCATION FUND, INC.
151 W. 19th Street
Suite 1103
New York, NY 10011
Tel.:  (646) 862-9396
Fax:  (914) 920-4057
msilverman@transgenderlegal.org